1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

REBECCA KAMRADT,

12

Plaintiff,

v.

13

ESURANCE INSURANCE COMPANY,

14

Defendant.

15

CASE NO. 2:22-cv-01445-TL

ORDER DENYING DEFENDANT'S
MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION
FOR PROTECTIVE ORDER

16

17    This case arises from a dispute regarding Defendant Esurance Insurance Company's

18  handling of a claim under Plaintiff Rebecca Kamradt's auto insurance policy. The matter is

19  before the Court on the Parties' discovery-related motions: Plaintiff's Motion for Protective

20  Order (Dkt. No. 19) and Defendant's Amended Motion to Compel (Dkt. No. 23). Having

21  considered the relevant record,[1] the Court DENIES Defendant's motion, GRANTS Plaintiff's

22

23

24

---

[1] Plaintiff argues, pursuant to Local Civil Rule ("LCR") 7(b)(2), that because Defendant failed to file a brief in opposition to her affirmative motion, the Court should consider Defendant's lack of response an admission that her motion has merit. Dkt. No. 24 at 1–2; Dkt. No. 25 at 13. In its reply in support of its affirmative motion, Defendant responds to Plaintiff's LCR 7(b)(2) argument by noting that its motion to compel clearly indicates an intent to oppose Plaintiff's motion and fully briefs the relevant arguments in opposition. Dkt. No. 27 at 8. The Court agrees

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 1

1    motion, and ORDERS Defendant to note Plaintiff's deposition to be taken either remotely or in

2    person at her attorney's office in Everett, Washington, at a mutually agreeable time.

3                              **I.      BACKGROUND**

4            On February 3, 2023, the Court entered a scheduling order requiring all discovery to be

5    completed by October 11, 2023.[2] Dkt. No. 15. In August, counsel for the Parties began

6    communicating to schedule Plaintiff's deposition. Dkt. No. 23 at 2. Plaintiff indicated

7    availability on September 13 and September 14. *Id.* On August 24, Defendant noted an in-person

8    deposition to be taken at Defense counsel's Seattle office location on September 13.[3] *Id.* On

9    August 30, Plaintiff's counsel expressed several concerns Plaintiff had about traveling into

10   Seattle for an in-person deposition and requested the deposition be taken remotely instead. Dkt.

11   No. 19 at 2–3. Defendant refused. *Id.*; Dkt. No. 23 at 2. After further fruitless negotiation,

12   counsel for the Parties held a discovery conference on September 6 but were apparently unable

13   to come to an agreeable compromise to avoid Court involvement in the dispute. Dkt. No. 19

14

15

16   that the Parties' respective positions on the substantive issues are fully briefed and considers the entire record in its
     determination on the merits of the Parties' respective motions.

17   [2] The case management schedule has since been amended by stipulation of the Parties. *See* Dkt. Nos. 28–29.

18   [3] There is some dispute in the briefing as to whether Defendant noted a "videotaped" deposition at this time. *See*
     Dkt. No. 23 at 4–5 (arguing that Defendant properly noted an "in-person videotaped deposition to Plaintiff in
     accordance with the requirements of CR 30"); *but see* Dkt. No. 25 at 4 (arguing that the deposition notice that was

19   served on Plaintiff indicated the method of recording to be "before a certified court reporter" and did not indicate
     videotaping as claimed). Defendant appears to admit on reply that its initial insistence that it properly noted a
     videotaped deposition was simply a "scrivener's error." Dkt. No. 27 at 2. But Defendant filed amended briefing on

20   the motion without catching this alleged scrivener's error. *Compare* Dkt. No. 21 *with* Dkt. No. 23. Rather than
     simply admitting its error and leaving it at that, though, Defendant goes on to suggest that the Court should hold it

21   against Plaintiff for even raising the error as an attempt to "distract from the issues." Dkt. No. 27 at 2. It is unclear to
     the Court why Plaintiff should have suspected that Defendant's multiple assertions regarding the contents of the
     deposition notice were simply typos when the term "videotaped" was used five separate times throughout

22   Defendant's motion to compel, including the express request for relief that the Court specifically "compel the
     in-person *videotaped* deposition of Plaintiff." Dkt. No. 23 at 7 (emphasis added). Based on this briefing, it was

23   entirely reasonable for Plaintiff to oppose Defendant's apparent attempt to seek greater relief than it was due. But,
     since Defendant's motion is otherwise denied on the merits, the Court will not further address Defendant's potential

24   lack of candor on this issue.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 2

1   at 4–5; Dkt. No. 23 at 2–3. Defendant then informed Plaintiff that it had cancelled the previously

2   noted deposition so the Parties could seek appropriate relief from the Court. Dkt. No. 19 at 5.

3                                  **II.      DISCUSSION**

4           A district court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d

5   732, 751 (9th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 26(c), "[a] court may, for

6   good cause, issue an order to protect a party or person from annoyance, embarrassment,

7   oppression, or undue burden or expense," including by specifying terms, including the time and

8   place, for discovery. Fed. R. Civ. P. 26(c)(1). The burden is on the party seeking the order to

9   "'show good cause' by demonstrating harm or prejudice that will result from the discovery."

10  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). Similarly, a party may seek to

11  compel an opposing party to cooperate in discovery. Fed. R. Civ. P. 37(a).

12  **A.      Defendant's Motion to Compel**

13          As an initial matter, Defendant's affirmative motion to compel appears to be procedurally

14  premature. Rule 37 permits a party to move to compel deposition testimony only *after* a

15  deponent refuses to respond to specific questions asked during a deposition or otherwise fails to

16  appear for a properly noted deposition. *See* Fed. R. Civ. P. 37(a)(3)(B)(1); *see also, e.g.*, *Yagman*

17  *v. Edmondson*, No. C15-7210, 2016 WL 10651068, at *4 (C.D. Cal. June 6, 2016) ("Generally, a

18  motion to compel attendance at a deposition is premature until the party fails to appear following

19  service of a properly noticed deposition."); *Tian-Rui Si v. CSM Inv. Corp.*, No. C06-7611, 2007

20  WL 9232170, at *1 (N.D. Cal. July 25, 2007) ("At this time, Defendant Chen has not failed to

21  appear because the deposition date is still in the future. Accordingly, the motion to compel . . .

22  [is] premature and must be denied without prejudice."). Although Plaintiff's deposition was

23  properly noted for September 13, it was expressly postponed indefinitely by Defendant on

24  September 6 after the Parties failed to reach a compromise on the location and/or format for the

1    deposition (but before the discovery motions were filed). Dkt. No. 20 at 45. Because there was

2    no longer a properly noted deposition pending as of September 6, Plaintiff cannot be said to have

3    failed to appear or refused to cooperate per Rule 37 at the time Defendant filed its motion to

4    compel. The Court therefore DENIES Defendant's motion to compel as premature.[4]

5    **B.      Plaintiff's Motion for Protective Order**

6          Plaintiff appropriately moved for a protective order after the Parties fulfilled their duty to

7    meet and confer but remained at an impasse regarding the location and format of Plaintiff's

8    deposition. Although the Court has denied Defendant's affirmative motion to compel Plaintiff's

9    deposition, it will consider Defendant's arguments from its briefing as its opposition to

10   Plaintiff's requested relief.[5] *See* Dkt. No. 27 at 8 (arguing on reply in support of its affirmative

11   motion to compel that "[Defendant] and Plaintiff filed motions in direct opposition on the same

12   day, and the Court should consider all related filings together").

13         The Court finds good cause to enter a limited protective order for Plaintiff to avoid undue

14   burden or expense in taking her deposition. Because Defendant has insisted on taking Plaintiff's

15   deposition in person in Seattle, Plaintiff seeks a protective order directing Defendant to take her

16   deposition remotely instead. Plaintiff asserts several reasons why an in-person deposition in

17   Seattle would cause an undue hardship. Most significantly, Plaintiff's job requires her to work

18   closely with children who are immunocompromised. As such, the potential impact if Plaintiff

19   were to contract the COVID virus is greater than for the general public, and Plaintiff is

20   justifiably concerned about having to undertake any activity that increases her exposure risk.

21

22   [4] Defendant may refile its motion if Plaintiff fails to attend, or otherwise refuses to cooperate in, a subsequent
     deposition noticed in accordance with this order.

23   [5] The Court can still compel the relief requested by Defendant in its affirmative motion "on just terms" if Plaintiff's
     "motion for a protective order is wholly or partly denied." Fed. R. Civ. P. 26(c)(2). Therefore, despite denying
     Defendant's motion on procedural grounds, the Court's determination of Plaintiff's motion on the merits also goes

24   to the merits, or lack thereof, of Defendant's affirmative motion.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 4

1   Dkt. No. 19 at 2–3. Additionally, Plaintiff has a limited income and will already have to take

2   unpaid leave to attend the deposition regardless of location or format. *Id.* Any unnecessary

3   increase in expenses related to this case, or additional time off due to contracting an illness while

4   pursuing this case, could reasonably present an outsized financial hardship on Plaintiff. *Id.* Thus,

5   Plaintiff has presented good cause for an order protecting her from having to have her deposition

6   taken in person in Seattle due to the specific facts in this case and the lack of prejudice to

7   Defendant as set forth below.

8          Defendant fails to establish sufficient prejudice to warrant compelling Plaintiff to submit

9   to an in-person deposition in Seattle. Defendant's primary argument against conducting a remote

10  deposition is that it prefers an in-person deposition in order to observe Plaintiff's responses and

11  would therefore generally be prejudiced by having to take her deposition remotely. Dkt. No. 23

12  at 3–4. But Defendant requested to have two of its witnesses deposed remotely (*see* Dkt. No. 27

13  at 7), and Defendant's arguments regarding the importance of evaluating an opposing party

14  witness would equally apply to its witnesses. *See Vargas v. Evergreen Pro. Recoveries Inc.*, No.

15  C21-0926, 2022 WL 856991, at *2 (W.D. Wash. Mar. 23, 2022) (rejecting the need for in-person

16  deposition of the plaintiff because the defendant "asserts broad justifications for an in-person

17  deposition that would apply to all remote depositions and that, if taken at face value, would

18  eviscerate the rule allowing for remote depositions"). Even before the advent of robust

19  videoconferencing tools, and their widespread adoption in litigation throughout the COVID

20  pandemic, the federal rules contemplated a party's preference against remote depositions giving

21  way in the face of a good-cause showing. *See* Fed. R. Civ. P. 26(c), 30(b)(4). The idea that the

22  party noting a deposition has a strict entitlement to require the deponent to appear in person (Dkt.

23  No. 19 at 4) is simply an atextual reading of the rules.

24

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 5

1    The Court also questions Defendant's sincerity regarding the extent to which it finds

2    remote depositions particularly prejudicial in this case since. Defendant argues that "[r]emote

3    depositions for obtaining controversial testimony, such as from an opposing party, are not

4    recommended." Dkt. No. 23 at 4. The Court acknowledges there are some limitations with

5    conducting a remote deposition. But again, Defendant sought to have two key (albeit

6    out-of-state) Esurance witnesses—*i.e.*, Esurance's claim adjuster who plays a central role in the

7    case and its Fed. R. Civ. P. 30(b)(6) designee who is designated to testify on the party's behalf—

8    deposed remotely by Plaintiff. Dkt. No. 19 at 4. Here, the Court generally agrees with the *Vargas*

9    court that "what is good and manageable for one side is appropriate for the other." *Vargas*, 2022

10   WL 856991, at *2 (quoting *PC-41 DOE v. Poly Prep Country Day Sch.*, No. C20-3628, 2022

11   WL 420619, at *2 (E.D.N.Y. Jan. 20, 2022)).

12       Other than the generalized prejudice associated with all remote depositions, Defendant

13   offers no persuasive argument for any additional particularized prejudice. Instead, Defendant

14   attempts to downplay Plaintiff's hardship concerns by noting that the states of emergency

15   previously occasioned by the COVID pandemic have been lifted on both a state and national

16   level. Dkt. No. 23 at 5–6. While this is true, it does not mean that COVID is no longer a valid

17   concern worthy of the Court's consideration, nor does it mean that the lived and learned

18   experience of the Court during that time should not also be taken into account.[6] Unlike

19   Defendant's claims of prejudice, Plaintiff's COVID-related concerns are not generalized but

20   specific to her unique circumstances as a "Certified Behavior Technician [who] works with

21   autistic children, some of whom have compromised immune systems." Dkt. No. 19 at 3. Thus,

22

23   ---
[6] The Court is grateful that it resides in a geographic area where vaccination rates are relatively high and community
     precautions are generally practiced, but the reality that COVID has become endemic is still an active consideration
24   that the Court must routinely confront in conducting the business of the Court.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 6

1  her hardship arguments regarding COVID exposure risk are sufficiently particularized to warrant

2  a good-cause finding.

3      It also appears that Plaintiff proposed a reasonable compromise to the dispute over

4  conducting the deposition remotely, by offering to appear in person for the deposition in Everett,

5  Washington. While acknowledging that it would not alleviate all of her concerns, Plaintiff is

6  seemingly willing to appear in person for a deposition so long as she does not have to travel all

7  the way into Seattle. Dkt. No. 25 at 12. She has suggested conducting the deposition from her

8  attorney's office near her home in Everett, which means she could avoid taking public

9  transportation which could increase her exposure to COVID. *Id.* at 11–12. Defendant rejected

10  this compromise outright, choosing instead to proceed to motion practice on the issue. *Id.*; Dkt.

11  No. 23 at 7. Now, Defendant appears to argue that Plaintiff's willingness to offer a compromise

12  to avoid the Court's involvement in this discovery dispute somehow undercuts her good-cause

13  justifications for seeking a remote deposition in the first place. Dkt. No. 23 at 7. The Court flatly

14  rejects Defendant's invitation to hold against Plaintiff her good-faith efforts to resolve this

15  dispute without Court involvement as required by this Court's Standing Order. *See* Judge Tana

16  Lin, Standing Order for All Civil Cases, Section IV.B (last updated Jun. 16, 2023) ("The Court

17  strongly encourages Parties to make every effort to resolve discovery disputes without the

18  Court's intervention.").

19      Further, Defendant's arguments as to how it would be prejudiced by this potential

20  compromise are completely without merit and border on frivolous. Defendant attempts to argue

21  that requiring Plaintiff—an individual of moderate means and limited income—to travel to

22  Seattle for the deposition would pose only "minimal cost" on her, but it would impose an "undue

23  burden and expense" on Defendant—an insurance company that is a subsidiary of a massive

24

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 7

1    insurance conglomerate[7] that reported over $50 billion in consolidated revenues in 2022[8]—to

2    conduct the deposition in Everett. Dkt. No. 27 at 8. Defendant offers absolutely no support for

3    the argument that the cost of conducting one deposition in a single-plaintiff insurance bad-faith

4    case in a county adjacent to where its attorneys' offices are located somehow constitutes "an

5    undue burden and expense." *Id.* More importantly, Defendant offers no support for the

6    proposition that conducting the deposition in Everett would be significantly more expensive or

7    burdensome than conducting it in Seattle, which it admits is a difference of less than 30 miles.

8    *Id.*; *see also* Dkt. No. 23 at 7.

9        The Court also rejects Defendant's argument that the burden on Plaintiff to be deposed in

10   Seattle is no different than the burden she will face if she ends up having to later attend her trial

11   in Seattle. Dkt. No. 27 at 5–6. This argument fails for two reasons. First, Plaintiff did not choose

12   to bring her case in Seattle. Rather, she was forced out of her chosen state-court venue in her

13   home county because Defendant removed the case to federal court. *See* Dkt. No. 1. Second, not

14   granting the protective order would actually increase her overall burden (requiring her to make a

15   seemingly unnecessary extra trip into Seattle for her deposition), whereas granting the protective

16   order will relieve the additional burden imposed on her simply because the federal rules allowed

17   Defendant to override her chosen preferred and generally more convenient venue.

18       Consequently, the Court FINDS that Plaintiff has established good cause to relieve her of

19   the undue burden of having to attend an in-person deposition in Seattle. The Court further FINDS

20   that Plaintiff has made a good-faith effort to avoid this dispute by proffering two reasonable

21   alternatives that would reduce her burden while addressing Defendant's stated concerns in

22

23   [7] *See* Dkt. No. 14 (declaring that Defendant's ultimate parent company is The Allstate Corporation).

24   [8] *See* Press Release, *Allstate Reports Fourth Quarter and Full Year 2022 Results* at 1 (Feb. 1, 2023), available at
     https://perma.cc/H43H-YV36.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER - 8

opposition: (1) to conduct a remote deposition via videoconference (her preferred option) or

(2) to conduct an in-person deposition in Everett (her compromise option). On the specific facts

of this case, Defendant has failed to demonstrate a particularized prejudice to overcome

Plaintiff's good cause justifications for seeking a remote deposition. Nonetheless, the Court

recognizes the general benefits that an in-person deposition offers a deposing party. The Court

also has broad discretion to issue an order "specifying terms, including time and place . . . for the

[deposition]; [or] prescribing a [] method other than the one selected by the party seeking

discovery." Fed. R. Civ. P. 26(c)(1)(B)–(C).

The Court therefore GRANTS Plaintiff's motion for a protective order (Dkt. No. 19), but

ORDERS that the deposition be taken *either* remotely via videoconference or in person at Plaintiff

counsel's offices in Everett, Washington, at a mutually agreeable time. If an in-person deposition

is noted pursuant to this Order, the Parties must ensure that sufficient precautions are taken to

minimize Plaintiff's COVID exposure risk, including (but not limited to) those measures

discussed in the Parties' briefing. *See* Dkt. No. 23 at 7; Dkt. No. 27 at 4.

Dated this 1st day of December 2023.

_____
Tana Lin
United States District Judge