1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

11

REBECCA KAMRADT,

CASE NO. 2:22-cv-01445-TL

12

Plaintiff,

v.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

13

ESURANCE INSURANCE COMPANY,

14

Defendant.

15
16
17

18          This case arises from a dispute regarding Defendant Esurance Insurance Company's

19   handling of a claim under Plaintiff Rebecca Kamradt's auto insurance policy. The matter comes

20   before the Court on the Parties' amended cross motions for summary judgment (Dkt. Nos. 73,

21   75). Having reviewed the relevant record and governing law and having held oral argument on

22   the motions (*see* Dkt. No. 79), the Court GRANTS IN PART Defendant's motion (Dkt. No 73) and

23   GRANTS IN PART and DENIES IN PART Plaintiffs' motion (Dkt. No. 75).

24

# I.   BACKGROUND

## A.   Facts

The Parties generally appear to agree on the timing and course of the events in this case, even as they offer competing narratives regarding whether Defendant properly investigated and timely paid out Plaintiff's claims under the Policy. To focus on the relevant facts in the voluminous record and because the Parties' record citations were generally deficient (*see* Section III.A.2, *infra*) the Court provides an abbreviated factual summary and directly addresses relevant facts in its analysis of the claims at issue.

Plaintiff Rebecca Kamradt had insured her 2018 Honda Fit LX (the "Vehicle") with Defendant Esurance. On September 13, 2021, while driving the Vehicle, Plaintiff was involved in a two-car accident with another driver. Both Parties agree that the other driver, Samantha Lane, was at fault for the crash. The other vehicle was insured by non-party United Services Automobile Association ("USAA").

Plaintiff's insurance policy (the "Policy") provided collision coverage with a $1000 deductible and underinsured property ("UMPD") coverage with a $100 deductible. Defendant offers rental car coverage, but Plaintiff declined to pay for this additional coverage. Dkt. No. 47-2 at 2. Plaintiff also declined "auto loan/lease coverage," "customized parts and equipment coverage limits," and "towing and labor." *Id.*

On the day the collision occurred, Plaintiff reported it to Esurance, which assigned adjuster Jennifer Mercer to investigate. Mercer promptly extended collision coverage. Both Plaintiff and Esurance attempted to contact USAA over the following weeks to see if it could make a liability determination and pay for some of the property damage.

On September 20, Plaintiff had the Vehicle assessed at an Esurance-preferred repair shop, which estimated repair costs of under $5,500. Esurance approved the estimate on September 22.

Mercer and Plaintiff discussed  pursuing UMPD coverage for the lower deductible.[1] Mercer informed Plaintiff that UMPD coverage would not apply until USAA had denied coverage. In October, Plaintiff told Mercer she had spoken with USAA, who had no record of a policy for Ms. Lane. In December, USAA informed Plaintiff that the vehicle Ms. Lane was driving had been reported stolen and they would likely be denying liability. In January 2022, Esurance issued payment to its preferred repair shop, but Plaintiff contacted Esurance to say she did not authorize the payment.[2] In February, Plaintiff took the Vehicle to Haury's Lake City Collision. Between the date of the collision and taking the car to Haury's, Plaintiff continued driving the Vehicle, adding nearly 6,000 miles in that time period. On April 7, Haury's sent Esurance a damage analysis and repair estimate of over $15,000.

Esurance claims that it was unaware that the Vehicle was at Haury's until it received the April 7 notice. After communicating with Haury's, Esurance decided to deem the Vehicle a total loss on April 25. Esurance required Plaintiff to return certain total loss paperwork before it would transfer the title of her Vehicle to itself and issue the third installment of the total loss payment. The Parties disagree about how promptly Plaintiff returned this paperwork, whether and for how long Esurance was aware that the Vehicle was accruing storage fees at Haury's, whether the Policy covered vehicle storage fees, and whether Esurance unreasonably delayed payment of the storage fees. They also contest the circumstances surrounding Esurance's attempt

---

[1] The Parties quibble over the exact nature of the discussion, but generally agree that Plaintiff had expressed not being able to afford some amount of the payment. Plaintiff asserts that she mistakenly believed she "would be forced to incur the full cost of repairs, including her $1,000.00 deductible before receiving any reimbursement from Esurance." She also believed that Mercer had indicated that she was awaiting USAA's denial "before issuing a first party payment." Defendant asserts that Plaintiff had expressed not being able to afford the $1,000 deductible on its own.

[2] Both Parties agree that Plaintiff contacted Esurance to say she did not authorize payment, but Plaintiff also somewhat contradictorily contends that she never declined an offer of payment by Esurance.

to initiate a "forced owner retain" by re-titling the Vehicle to Plaintiff to shift responsibility for the storage fees.

On May 4, Esurance sent Plaintiff a settlement letter offering three installment payments for her total loss: (1) $2,396.01 to her lienholder, (2) immediate payment to Plaintiff for $9,668.22, and (3) a final payment to Plaintiff of $5,338.57 upon receipt of completed total loss paperwork. On May 8, Esurance issued the first two of these three installment payments. Meanwhile, Esurance was in communication with Haury's and Plaintiff regarding the storage fees, which by May 19 had reached nearly $10,000. On May 23, Esurance offered to pay $4,960.13 to Haury's, and it made this payment on June 15. Plaintiff retained counsel, who emailed a letter of representation to Mercer on July 21. Esurance issued the final total loss installment payment of $5,338.57 to Plaintiff on August 8, 2022.

Defendant claims to have ultimately paid all of Plaintiff's covered benefits as well as three items not covered under the Policy: over $27,000 in storage fees to Haury's, rental coverage, and a $1000 "reimbursement" for a deductible that Plaintiff never paid. When deposed, Plaintiff admitted she had never paid any money to USAA, Haury's, or anyone else regarding her collision claim.

**B.    Procedural Background**

On September 12, 2022, Plaintiff, a Washington citizen, filed a state court complaint against Defendant, an Illinois corporation with its principal place of business in California. Dkt. No. 1-1 ¶ 3.1; Dkt. No. 1 (notice of removal) ¶ 5. She seeks damages for breach of contract, bad faith, and violations of the Washington Consumer Protection Act ("CPA") as well as the Washington Insurance Fair Conduct Act ("IFCA"). *Id.* at 21. On October 12, 2022, Defendant timely removed the case to this Court based on diversity jurisdiction. Dkt. No. 1 at 3–5. Though

1   Plaintiff's complaint indicates actual damages of less than $40,000, Defendant's basis for

2   removal was that the CPA and IFCA allow for treble damages and attorney fees. *See id.* ¶ 21.

3          Under Court direction, the Parties have utilized a local procedure for submitting cross-

4   motions without reply briefs in exchange for extended page allowances for responsive briefing.

5   *See* Dkt. Nos.45, 57; *see also* LCR 7(k). Defendant seeks summary judgment on all claims.

6   Plaintiff seeks partial summary judgment on all claims.

7                              **II.   LEGAL STANDARD**

8          The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after

9   adequate time for discovery and upon motion, against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

12  (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the

13  evidence presents a sufficient disagreement to require submission to a jury or whether it is so

14  one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S.

15  242, 250–52 (1986).

16         The party moving for summary judgment must carry its burden of production by "either

17  produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or

18  show[ing] that the nonmoving party does not have enough evidence of an essential element to

19  carry its ultimate burden of persuasion at trial." *Nissan Fire v. Marine Ins. Co., Ltd. v. Fritz Cos.,*

20  *Inc.*, 210 F.3d 1099, 1102 (2000). This showing must be made through evidence in the record.

21  Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact cannot be or is

22  genuinely disputed must support the assertion"). Unless the burden of production is met, "the

23  nonmoving party has no obligation to produce anything" to support its claims or defenses.

24  *Nissan Fire*, 210 F.3d at 1103.

Courts do not make credibility determinations or weigh the evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Further, uncorroborated and self-serving testimony does not create a genuine issue of fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal citations omitted).

Additionally, "when parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)). However, it is not required that the court's discussion of the cross-motions be organized in separate sections, particularly where the central legal issues are the same. *See id.* (holding the district court acted properly where it summarized party's arguments, cited authority referenced by the party, and cited exhibits to a declaration submitted by the party).

Finally, courts may grant motions for summary judgment on grounds not raised by either party, so long as they provide "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). *Sua sponte* summary judgment is appropriately granted if there has been "adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993). This authority was made explicit in the 2010

1   amendments of the Federal Rules of Civil Procedure. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th

2   Cir. 2014)  ("[D]istrict courts are widely acknowledged to possess the power to enter summary

3   judgments *sua sponte*, so long as the losing party was on notice that she had to come forward

4   with all of her evidence." (quoting *Celotex*, 477 U.S. at 317)).

### III.   ANALYSIS

**A.   Preliminary Matters**

**1.      Revised Declaration of Eliot Harris**

On July 31, 2024, the Court ordered the Parties to re-submit their cross-motions and response briefs to provide pincites to the record in compliance with Federal Rule of Civil Procedure 56(c). Dkt. No. 72. The July 31 Order made clear that "[n]o additional words (facts, authorities, or arguments) may be added [to this amended briefing] apart from provision of pincites and other formatting updates." *Id.* at 2. However, without explanation or leave of Court, Defendant has attempted to file an expanded version of Exhibit 4, which is eleven pages longer than the exhibit as originally filed. *Compare* Dkt. No. 47-4 (totaling thirty-eight pages), *with* Dkt. No. 75-1 (totaling forty-nine pages). Defendant made a litigation decision to only include certain portions of Exhibit 4 when initially seeking summary judgment. *See* Dkt. No. 47 (declaration of attorney Eliot Harris choosing to include only "relevant excerpts of Esurance's Claim Notes file"). Therefore, the Court STRIKES Defendant's Exhibit 4 as amended (Dkt. No. 74-1).

**2.      Note Regarding Deficient Record Citations**

In its July 31 Order, the Court specifically pointed out both Parties' failures to back up their assertions with specific page citations in the record. *See* Dkt. No. 72. The Court even provided further opportunity for the Parties to provide clear citations to record evidence at oral argument. However, both Parties' amended briefing remain deficient. For example, Defendant

1  argues the Policy covers towing and labor, but not storage, costs but points only to a page which

2  does not address the Policy's coverages. *See* Dkt. No. 74 at 6 (citing Dkt. No. 47-3 at 2).

3  Additionally, Defendant's only record citation for its assertion that it paid Haury's $27,000 in

4  storage fees is a deposition excerpt which does not even mention this dollar figure. Dkt. No. 75

5  at 14 (citing Dkt. No. 47-8 at 8–9). Meanwhile, Plaintiff fails to specifically identify how

6  references to large sections of her earlier briefing support individual claims. *See, e.g.*, Dkt. No.

7  73 at 27 (arguing violation of a specific administrative regulation based on sixty-five pages of a

8  seventy-seven page record and eleven pages of factual assertions without specifically identifying

9  how that evidence supports the alleged violation).

10        The Court bases its factual findings only upon the record as cited by the Parties in their

11  briefing.[3] As previously expressed in the July 31 Order, courts should not have to guess what

12  evidence a party believes supports a specific argument. "Judges are not like pigs, hunting for

13  truffles buried in briefs." *United States v. Osborne*, No. C20-10404, 2022 WL 264555, at *2 (9th

14  Cir. Jan. 28, 2022) (internal citation omitted). "Nor are they archaeologists searching for

15  treasure." *Krause v. Nev. Mut. Ins. Co.*, No. C12-342, 2014 WL 99178, at *2 (D. Nev. Jan. 3,

16  2014). Critically, "[j]udges need not paw over files without assistance from the parties." *Orr v.

17  Bank of Am.*, 284 F.3d 764, 775 (9th Cir. 2002) *superseded by Rule on other grounds as stated in*

18  *David v. Betts*, No. C20-2, 2024 WL 2214613, at *17 n.20 (D. Haw. May 15, 2024) (internal

19  citation omitted) (allowing trial courts to disregard deposition testimony referenced without page

20  and line numbers); *see also Villiarimo*, 281 F.3d at 1061 (The Ninth Circuit "has refused to find

21  a genuine issue where the only evidence presented is uncorroborated and self-serving testimony.

22  (cleaned up) (internal citations omitted)).

23

24  [3] During oral argument, the Court was careful to specifically confirm with Plaintiff that her amended summary judgment briefing cites to ECF page numbers.

1

2

**B.   Breach of Contract Claim**

    **1.   Propriety of Assessing Grounds for Summary Judgment in Defendant's Favor**

Before the summary judgment hearing, the Court notified Counsel for both Parties via email that it was considering dismissing all of Plaintiff's claims, and provided a list of questions to be addressed at the hearing, including whether Defendant had adequately moved for summary judgment on the breach of contract claim.[4] Defendant moved for summary judgment on all claims but failed to provide explicit argument regarding the breach of contract claim in the moving brief. *See* Dkt. No. 75. Defendant's moving brief included argument regarding the other three claims. *See id.* Defendant's opposition brief includes a section regarding the deficiencies of Plaintiff's breach claim. *See* Dkt. No. 76 at 9–11. At oral argument, Defense Counsel insisted that Esurance had adequately raised breach of contract in the moving papers in part because it argued that no policy provision was breached in its argument regarding the bad faith claim. Indeed, Plaintiff explained during oral argument that the basis of her breach of contract claim was a breach of the implied duty of good faith.

Given these admissions, the Court finds it appropriate to determine whether Defendant is entitled to summary judgment on the breach of contract claim. Additionally, the Court would be within its authority to grant summary judgment on this ground *sua sponte* because Plaintiff received "notice and a reasonable time to respond," based on the Court's pre-hearing notice. *See*

---

[4] The Court also previewed to Counsel prior to oral argument on the cross motions that it was considering remanding some of the claims in this case. Counsel agreed at oral argument that amount in controversy in this case would fall below the $75,000 threshold required for diversity actions if treble damages and attorney fees were not awarded under IFCA and the CPA and if no attorney fees were awarded under *Olympic Steamship.* However, because Plaintiff's IFCA claim survives, the matter cannot be remanded to Snohomish County Superior Court. Additionally, the Court has become aware of authorities that indicate that in this Circuit, diversity jurisdiction is properly assessed only at the time of removal and not after the narrowing of claims through litigation. *Cf. Barefield v. HSBC Holdings*, 356 F. Supp. 3d 977, 985 (E.D. Cal. 2018) (examining in detail whether remand is appropriate once the amount of controversy falls below the jurisdictional threshold in the course of litigation and detailing how the weight of authority points to the conclusion that diversity jurisdiction is assessed only at the time of removal).

Fed. R. Civ. P. 56(f). Moreover, Plaintiff affirmatively raised breach of contract in her own

summary judgment motion, so she has had "adequate time to develop the facts on which [she has

depended] to oppose summary judgment." *See Buckingham*, 998 F.2d at 742. Finally, at the end

of her rebuttal argument, the Court specifically asked Plaintiff whether she has anything else to

add to her arguments on breach of contract, and Plaintiff declined the opportunity to provide

anything further.

### 2.      Existence of a Breach

To prevail on a breach of contract claim under Washington law, plaintiffs must show

(1) existence of a contractual duty (2) which was breached and (3) proximately caused

damages." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6

(1995). As Defendant points out, Plaintiff must show both breach of the insurance contract and

resulting contractual damages to maintain a breach of contract claim." Dkt. No. 76 at 9 (citing

*Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 775, 189 P.3d 777 (Wash. Ct.

App. 2008)); *see also, e.g.*, *Haywood v. Amazon.com*, No. C22-1094, 2023 WL 4585362, at *4

("Failing to identify a breached contractual provision dooms a breach of contract claim.")

(collecting cases applying Washington law). This is because "Washington law does not, in fact,

force insurers to pay for losses that they have not contracted to insure." *Polygon Nw. Co.*, 143

Wn. App. at 789.

Plaintiff has failed to make any showing that a provision of the contract was breached,

arguing only instead that Defendant breached the contract's implied covenant of good faith. *See*

*generally* Dkt. Nos. 73, 74. Plaintiff cites *Coventry* for the proposition that an insurer's

misconduct breaches their duty to act in good faith. Dkt. No. 74 at 30 (quoting 136 Wn.2d at

276). However, she misapplies the decision. In *Coventry*, the Washington Supreme Court

specifically allowed claims of *bad faith* to proceed beyond the summary judgment stage without

1   reversing dismissal of breach of contract claims where the insurer "breached its contract . . . by

2   acting in bad faith." 136 Wn.2d at 285.

3      Therefore, the Court finds that Plaintiff has failed to present a triable issue regarding her

4   breach of contract claim.

5   **C.   Bad Faith Claim**

6      Insurers can be sued in tort under Washington law for violation of the duty of good faith

7   to their policyholders. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003). To prevail, the

8   policyholder must show an "unreasonable, frivolous, or unfounded" breach of the insurance

9   contract. *Id.* (citing *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d 322 (2002)). "[A]n

10  insurer is entitled to . . . a dismissal on summary judgment of a policyholder's bad faith claim

11  only if there are no disputed material facts pertaining to the reasonableness of the insurer's

12  conduct under the circumstances, or the insurance company is entitled to a prevail on a bad faith

13  claim by showing that to prevail as a matter of law on the facts construed most favorably to the

14  nonmoving party." *Id.* (citing *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907,

15  920, 792 P.2d 520 (1990)). Additionally, a violation of the Unfair Claims Settlement Practices

16  Act, codified in the Washington Administrative Code ("WAC") at 28-30-330 *et seq.*,

17  "constitute[s] a breach of an insurer's duty of good faith." *Tank v. State Farm*, 104 Wn.2d, 381,

18  386, 393 715 P.2d 1133 (1986). Critically, "[a]n insurer may not put its own interests ahead of its

19  insured's." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693, 696

20  (2010), *as corrected on denial of reconsideration* (June 28, 2010) (internal citations omitted).

21     Plaintiff provides many possible bases for her bad faith claim, ranging from failure to

22  investigate and disclose all available coverage under the policy, to implementing the "forced

23  owner retain," to alleged violations of a dozen provisions of the Unfair Claims Settlement

24  Practices Act. *See* Dkt. No. 73 at 26; Dkt. No. 74 at 23–30. Though the Court does not examine

the merits of all of Plaintiff's assertions of bad faith, it finds that she has provided sufficient evidence to establish a genuine issue for trial regarding this claim. In particular, drawing all justifiable inferences in her favor, Plaintiff has set forth evidence that Defendant may have acted unreasonably with respect to the attempted forced owner retain. Even without considering the declaration of Robert Dietz, the Court finds that Plaintiff has sufficiently identified potentially misleading and inconsistent communications by Esurance that, at minimum, created confusion and possibly unreasonably delayed the third installment payment on Plaintiff's total loss claim. Specifically, Plaintiff shows that per Defendant's own claim notes, she released the vehicle to Esurance on May 3, 2022 (Dkt. No. 73 at 11–12 (citing Dkt. No. 52-2 at 47))—the day before Esurance sent her the total loss breakdown letter (Dkt. No. 52-13 (May 4 letter))—and weeks before Defendant attempted to initiate the forced owner retain process. *See* Dkt. No. 73 at 12–13 (describing events that took place on May 23). As a result, a reasonable juror could possibly find that Defendant's actions regarding who would be left responsible for the vehicle—and thus, storage fees—impermissibly put the insurer's needs ahead of the needs of the policyholder. *See Am. Best. Food, Inc.*, 168 Wn.2d at 406.

Defendant, meanwhile, has also raised factual issues that preclude summary judgment in Plaintiff's favor on the claim of bad faith. For example, Defendant maintains that it was never responsible for storage fees under the Policy. Dkt. No. 75 at 24. Defendant had even warned Plaintiff multiple times that she was responsible for mitigating storage fees. Dkt. No. 75 at 17 (citing Dkt. No. 47-4 at 37, 15, 13, 6). Yet Esurance demonstrates that it was working towards a resolution with Haury's on the storage fees even before Plaintiff retained counsel. *See* Dkt. No. 75 at 17 (citing Dkt. No. 47-4 at 3, 5 (communications with Haury's in June); Dkt. No. 73 at 14 (citing Dkt. No. 52-19 (July letter informing Defendant that Plaintiff had retained counsel)).

While Plaintiff has succeeded in defending against summary judgment on this claim, she

1  has not provided enough evidence for the Court to decide as a matter of law that Defendant's

2  actions regarding the forced owner retain were unreasonable or otherwise "frivolous[] or

3  unfounded." *See Safeco Ins. Co.*, 150 Wn.2d at 484. The Parties have "specifically averred"

4  contradictory facts, *see Lujan*, 497 U.S. at 888, and the Court is unable to determine as a matter

5  of law that either side prevails. Accordingly, both Parties' motions for summary judgment on the

6  bad faith claim are DENIED.

7  **D.      IFCA Claim**

8           IFCA allows first-party claimants to seek damages if they are "unreasonably denied a

9  claim for coverage or payment of benefits by an insurer." RCW 48.30.015(1).

10          **1.      Unreasonable Denial of a Claim for Coverage**

11          Defendant argues that Plaintiff cannot maintain an IFCA claim because she has not

12  demonstrated any damages, given that Esurance paid everything that was due under the Policy,

13  and ultimately paid more than what was covered under the Policy. *See* Dkt. No. 75 at 24.

14  Defendant asserts—without providing record citations—as follows:

15              As an initial matter, Esurance never refused to provide coverage
                for any portion of Plaintiff's claim. After the Accident, Esurance
16              immediately offered collision coverage and later offer [*sic*] UMPD
                coverage when it appeared that USAA may deny coverage and/or
17              liability. As to storage fees, the Policy does not provide coverage
                for these fees, and even despite that, Esurance offered to pay a
18              reasonable amount in storage fees. Esurance even paid $1,000 to
                Plaintiff for a deductible that she never incurred and provided
19              rental car coverage that she never paid a premium for. Plaintiff
                received all Policy benefits that was owed. In fact, she received
20              much more than that.

21  *Id.* Regardless, in rebuttal, Plaintiff does not provide adequate argument or record citations to

22

23

24

demonstrate that any payments due under the Policy were left unpaid.[5] *See generally* Dkt. No.

74. Indeed, Plaintiff clarified at oral argument that her IFCA claim is based on the untimely

payment of benefits which is deemed the equivalent of a denial of payment of benefits, as

opposed to denial of coverage.[6] The Court therefore focuses on the second prong, unreasonable

denial of payment of benefits.

### 2.      Unreasonable Denial of Payment of Benefits

As a court in this District has recognized in the context of IFCA claims "a refusal to pay a

demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only

temporary." *Gochev v. First Am. Prop. & Cas. Ins. Co.*, 695 F. Supp. 3d 1255, 1267 (W.D.

Wash. 2023), *appeal dismissed*, No. C23-3714, 2024 WL 2880635 (9th Cir. May 31, 2024);

*accord Cohodas v. Cont'l Ins. Co.*, No. C22-1561, 2024 WL 623748, at \*4 (W.D. Wash. Feb. 14,

2024), *reconsideration denied*, No. C22-1561, 2024 WL 2723811 (W.D. Wash. May 28, 2024)

(concluding in the absence of a state supreme court decision that recent Washington appellate

court decisions "indicate that Washington law permits an IFCA claim even after a policy limits

payment"). However, it is the plaintiff's burden to show that the delay was tantamount to an

unreasonable denial of payment, as opposed to a reasonable dispute regarding the amount due

under a policy. *See Country Preferred Ins. Co. v. Hurless*, No. C11-1349, 2012 WL 2367073, at

\*6 (W.D. Wash. Jun. 21, 2012) (finding that a 15-month delay between accident and payment

---

[5] The Parties disagree that Defendant ever paid "\$1,000 to Plaintiff for a deductible that she never incurred and provided rental car coverage that she never paid a premium for." *Compare* Dkt. No. 74 at 24 (making this assertion), *with* Dkt. No. 74 at 18–19 (arguing that Esurance received a subrogation payment from USAA for the deductible and that Esurance never offered to pay or actually paid rental car costs). However, the status of these payments is immaterial to Plaintiff's IFCA claim because these costs were never covered under the Policy.

[6] Plaintiff's IFCA claim is less thoroughly briefed than her other claims, due in part to her failure to affirmatively argue that summary judgment is warranted on any part of her IFCA claim. *See generally* Dkt. No. 73 (not mentioning IFCA in the main text of the brief); *see also* Dkt. No. 76 at 17 (Defendant's response pointing out this lack of showing on the IFCA claim).

was motivated by a reasonable dispute and therefore could not give rise to an IFCA claim).

As clarified at oral argument, Plaintiff's IFCA claim is based entirely on allegedly unreasonable delays in payment of: (1) the third and final installment of her "total loss payment" of $5,338.57 to be paid "upon receipt of completed total loss paperwork" (*see* Dkt. No. 52-13 (May 4, 2022, total loss offer letter));[7] and (2) payment of vehicle storage fees at Haury's.[8] The Parties dispute whether storage fees are covered under the Policy. *See* Dkt. Nos. 74 at 12–13, 75 at 24. Further, during oral argument Plaintiff acknowledged that both the total loss payment and the storage fees were fully paid. Yet, she contends she has an IFCA claim. *See* Dkt. No. 74 at 32 (arguing that "Esurance's multiple violations of the Unfair Claims Settlement Practices Act and common law bad faith resulted in the 'denial' of payment of benefits under Kamradt's claim, including her final total loss payment") (quotations in original). Even assuming, without deciding, that storage fees are "part and parcel" of the Policy, the Court finds that some, but not all, of Plaintiff's arguments fail.

### a.   *Violations of the Unfair Claims Settlement Practices Act*

It is well-established that an IFCA claim cannot be premised solely on an Unfair Claims Settlement Practices Act violation. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684 (2017) ("We conclude that IFCA does not create an independent cause of action for regulatory violations."); *accord Cardenas v. Navigators Ins. Co.*, No. C11-5578, 2011 WL 6300253, at *6 (holding that simple, technical violations of Unfair Claims Settlement Practices Act provisions creating set time periods for acknowledging a claim and completing an

---

[7] Plaintiff alleges it was "*[o]nly after* Plaintiff suffered damages as a result of that denial, and after Plaintiff hired counsel, [that] Esurance agree[d] to issue the previously undisputed total final loss payment." Dkt. No. 74 at 32 (emphasis in original).

[8] Plaintiff asserts in her moving brief that Defendant refused to "take[] responsibility for the vehicle" and thus, pay for all storage fees incurred at Haury's, until after she had retained Counsel. Dkt. No. 73 at 14.

1    investigation "standing alone [did] not evidence any unreasonable conduct on the part of [an

2    insurer] in promptly responding to a tendered claim); *Hanson v. State Farm Mut. Auto. Ins. Co.*,

3    261 F. Supp. 3d 1110, 1116 (W.D. Wash. 2017).

4                    b.    ***Common Law Bad Faith***

5           With respect to Plaintiff's alternative argument that occurrence of common law bad faith

6    gives rise to an IFCA violation, Plaintiff relies heavily on her briefing regarding the existence of

7    bad faith, which in turn is largely predicated on alleged Unfair Claims Settlement Practices Act

8    violations. *Compare* Dkt. No. 74 at 31–32 (Plaintiff's one-paragraph defense of her IFCA claim

9    with no citations to the case record), *with id.* at 21–30 (defense of her bad faith claim). However,

10   authorities cited by Plaintiff herself indicate that she cannot rely on evidence of bad faith to make

11   out an IFCA violation. *See* Dkt. No. 74 at 32 (citing *Beasley v. GEICO*, 23 Wn. App. 2d 641,

12   668, 517 P.3d 500 (2022), *review denied*, 200 Wn.2d 1028 (2023), and *Traulsen v. Continental

13   Divide Ins. Co.*, No. 82507-1-I, 2024 WL 3327023, at *5–8 (Wash. Ct. App. July 8, 2024)).

14          In *Beasley*, the Washington Court of Appeals determined that insurance bad faith and

15   IFCA claims have different elements, even though some such claims "could overlap." 23 Wn.

16   App. 2d at 668. In relevant part, the appellate court held that there are cases in which

17   demonstrating insurance bad faith—by showing either that the insurer put its own interests ahead

18   of its insured's interests, or that the insurer violated the regulations contained in the Unfair

19   Claims Settlement Practices Act—is not adequate to establish an IFCA claim because of the

20   differing elements. *Id.* at 667–68; *see also id.* at 669 ("not all bad faith conduct constitutes an

21   IFCA violation"); *accord Traulsen*, 2024 WL 3327023, at *6.

22          The Parties have not cited—and the Court is not aware of—any Washington Supreme

23   Court authorities that take a conflicting view to *Beasley* or *Traulsen*. *See Kramer v. Safeco Ins.

24   Co. of Oreg.*, 428 F. Supp. 3d 456, 463 (W.D. Wash. 2019) ("In applying Washington law, the

Court must apply the law as it believes the Washington Supreme Court would apply it . . . .

Where there is no convincing evidence that the state supreme court would decide differently, a

federal court is obligated to follow the decisions of the state's intermediate appellate courts."

(cleaned up) (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.

2001) (additional citation omitted)).

### c. *Unreasonable Delay*

Looking simply at whether Defendant unreasonably delayed paying Plaintiff the third

installment of her total final loss payment and in paying Haury's for storage fees, the Court finds

that genuine disputes of material fact exist.

Recently, a court in this District found that a factual dispute precluded summary

judgment on an IFCA claim where the consumer proffered evidence that the insurer "took no

action on the claim in response to her demands . . . , made no offers . . . , and did not dispute [the

consumer's] injuries or demand at any point" and also failed to provide any evidence to the

contrary. *Cohodas v. The Continental Ins. Co.*, No. C22-1561, 2024 WL 623748, at *5 (W.D.

Wash. Feb. 14, 2024).

While not as stark as the facts in *Cohodas*, in the instant case, there is mixed evidence

about whether Defendant reasonable attempted to resolve Plaintiff's claims in a timely fashion.

*See* Dkt. No. 75 at 15–16. For example, Defendant did take action to try to resolve Plaintiff's

claims throughout the time period at issue. Esurance immediately began investigating upon

notification of the accident. *Id.* (citing Dkt. No. 47-4 at 31–37). Adjuster Mercer was in frequent

touch with both Plaintiff and Haury's. *See generally* Dkt. Nos. 47-4, 52-2. However, for the

reasons articulated in Section III.C, Defendant may not have been entirely reasonable and clear

in its communications with Plaintiff and Haury's regarding storage fees, even as it made efforts

to settle the matter. Defendant claims, without providing any record citations, that "any delays in

1    [the total loss payment] process was because Plaintiff did not timely complete and return her

2    total loss paperwork." Dkt. No. 75 at 22. But Plaintiff shows that she believed that she had

3    released the vehicle and turned in her paperwork before Mercer initiated the attempted forced

4    owner retain. Dkt. No. 73 at 13 (citing Dkt. No. 52-2 at 37, 35). Because genuine issues of

5    material fact exist regarding whether Defendant unreasonably delayed payments of benefits, the

6    Court DENIES summary judgment on the IFCA claim.

7    **E.      CPA Claim**

8           Private plaintiffs must prove five elements to prevail on a CPA claim: "(1) an unfair or

9    deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact;

10   (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Mellon v. Reg'l Tr.*

11   *Services Corp.*, 182 Wn. App. 476, 487–88, 334 P.3d 1120 (2014) (alteration in original)

12   (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780,

13   719 P.2d 531 (1986)).  A failure to prove any of the five elements "is fatal to [a private CPA]

14   plaintiff['s] claim." *Hangman Ridge*, 105 Wn.2d at 793.[9]

15          Defendant argues that Plaintiff's CPA claim fails on the first, fourth, and fifth elements

16   because she does not show occurrence of an unfair or deceptive act proximately causing injury to

17   business or property. Dkt. No. 75 at 18–23. The Court focuses on the fourth element, as

18   Plaintiff's lack of showing that she suffered a covered injury to her business or property alone

19   dooms her CPA claim.

20          For the purposes of the CPA, an injury to property may be sustained where a plaintiff

21   "was deprived of the use of her property for even a short amount of time." *Handlin v. On-Site*

22

23   ───────────────
     [9] For purposes of establishing the first element, a violation of WAC 284-30-330 constitutes a *per se* unfair trade
     practice under the CPA. *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 260 928 P.2d 1127 (1996).
     However, the Court does not reach whether this element of the claim is established because it fails on another

24   element.

*Manager Inc.*, 187 Wn. App. 841, 850, 351 P.3d 226, 230 (2015) (internal citation omitted); *cf.*

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 58 204 P.3d 885 (2009) (giving delay in

monetary refunds and loss of use of property as examples of possible CPA injuries). However,

"[p]ersonal injuries are not compensable damages under the CPA, . . . . Nor are emotional

damages such a[s] pain and suffering, and their attendant physical manifestations." *Dees v.*

*Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1310 (W.D. Wash. 2013) (citing *Ambach v. French*, 167

Wn.2d 167, 172 216 P.3d 405 (2009), and *Wash. St. Physicians Ins. Exch. & Assoc. v. Fisons*,

122 Wn.2d 299, 318, 858 P.2d 1054 (1993)); *accord Torres v. Mercer Canyons, Inc.*, 835 F.3d

1125, 1135 (9th Cir. 2016). In addition, attorney's fees incurred for bringing litigation do not

accrue an injury for CPA purposes. *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn.

App. 553, 564 (1992).

     In her moving brief, Plaintiff asks the Court to reserve the question of CPA damages[10] for

trial (*see* Dkt. No. 73 at 29), and in responding to Defendant's assertions that she has not

established the injury element, Plaintiff offers no legal or factual argument. *Compare* Dkt. No.

75 at 22–23 (arguing that Plaintiff has not shown legally compensable damages for her CPA

claim), *with* Dkt. No. 74 at 31 (arguing only that she had generally established a CPA violation

based on Defendant's misconduct).

     Defendant argues that Plaintiff did not suffer damages for loss of use to her vehicle (she

drove it for thousands of miles following the collision and also never purchased rental coverage)

and that her pain and suffering is not compensable under the CPA. Dkt. No. 75 at 23. Plaintiff

offers no response in her opposition brief (*see* Dkt. No. 74 at 31) and her Counsel admitted

during oral argument that Plaintiff had continued to drive her vehicle between the collision date

---

[10] Since Plaintiff provides no argument regarding her alleged CPA injury, the Court interprets this to mean that Plaintiff is not herself moving for summary judgment on the fourth element of her CPA claim.

(in September) and bringing it to Haury's for repair months later. Counsel also stated during oral argument that Plaintiff did not have consistent use of her vehicle and borrowed other vehicles when possible, and that Plaintiff ended up with a higher monthly car payment for her replacement vehicle because Defendant's delayed payment of benefits caused her to be unable to put down a larger down payment. However, Plaintiff did not raise these assertions in her complaint (*see* Dkt. No. 1-1) or any of her briefing (*see generally* Dkt. Nos. 73, 74) and did not provide record citations for them during oral argument; therefore, injury is not established. *See Hangman Ridge*, 105 Wn.2d at 794 (affirming trial court finding that no injury was established for CPA claim where "Plaintiffs contended they were injured by a tax liability, yet they offered no verification that the liability existed or that they ever actually paid it"); *see also Orr*, 284 F.3d at 775 (internal citation omitted) ("Judges need not paw over files without assistance from the parties.").

Further, just as it is "not acceptable legal practice to present new evidence or new argument in a reply brief," (*United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-596, 2019 WL 199645, at *6 (W.D. Wash. Jan. 15, 2019), *aff'd*, 831 F. App'x 346 (9th Cir. 2020)), evidence or argument raised for the first time will not be considered. *See, e.g.*, *Acasio v. Lucy*, No. C14-4689, 2017 WL 1316537, at *10 (N.D. Cal. Apr. 10, 2017) ("It is even more unfair and prejudicial to raise new arguments and authorities for the first time at oral argument, taking the opposing party by surprise and affording no opportunity to respond whatsoever."); *cf. Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's refusal to consider an argument raised for the first time in reply). Plaintiff has failed to demonstrate any of the types of damages that are compensable under the CPA. Therefore, the Court GRANTS summary judgment for Defendant on the CPA claim.

1    **F.      Motion to Strike Declaration of Robert Dietz**

2         The declaration of Plaintiff's expert Robert Dietz (Dkt. No. 63-1) was only offered in

3    support of: (1) an argument that Adjuster Mercer's "testimony confirms she was not properly

4    trained, and did not understand what good faith handling means or requires" (Dkt. No. 73 at 23);

5    and (2) an argument that towing and storage fees are "part and parcel of the loss to the vehicle"

6    in a collision or UMPD claim (Dkt. No. 74 at 13). However, Dietz's proffered testimony on the

7    first point is totally irrelevant; Mercer's training and perspective are not at issue, and this

8    statement is not probative of whether Plaintiff has adequately stated a bad faith claim. The Court

9    did not need to consider the Dietz declaration to resolve Plaintiff's motion. Defendant's motion

10   to strike, raised in its response brief (Dkt. No. 76 at 19–22), is therefore DENIED AS MOOT.

11   **G.      Affirmative Defenses**

12        In a throw-away section of her motion, Plaintiff seeks summary judgment on all twenty

13   of Defendant's affirmative defenses.[11] The Court is unable to make sense of most of Plaintiff's

14   argument as she provides very little reasoning or authority.

15        Regarding Defense 1 (failure to state a claim for relief), Plaintiff has correctly flagged

16   this as an "improper" defense. "A defense which demonstrates that plaintiff has not met its

17   burden of proof is not an affirmative defense." *Zivkovic v. S. California Edison Co.*, 302 F.3d

18   1080, 1088 (9th Cir. 2002). Therefore, "[c]ourts generally hold that failure to state a claim is not

19   a proper affirmative defense." *Satanic Temple, Inc. v. City of Scottsdale*, 423 F. Supp. 3d 766,

20   778 (D. Ariz. 2019) (collecting cases with similar holdings); *Fish, LLC v. Harbor Marine Maint.*

21   *& Supply, Inc.*, No. C17-0245, 2018 WL 1792186, at *3 (W.D. Wash. Apr. 16, 2018)

22

23   [11] Technically, Plaintiff moves to "strike" the affirmative defenses, but the Court construes her argument as one for
     summary judgment since she raises the issue in a motion for summary judgment, cites to the summary judgment
     standard, and does not otherwise bring up the standard for striking portions of pleadings under Rule 12(f). *See*
24   *generally* Dkt. No. 73 at 29–31.

1   (dismissing the defense because "failure to state a claim is not a proper affirmative defense

2   . . . [and instead] should be brought by motion").

3        However, as to the remaining five defenses, Plaintiff's sole arguments are as follows:

4            Defense No. 5, Esurance claims it was "denied the ability to issue
             payment under collision" because Kamradt took her vehicle to her
5            shop of choice. [Dkt. No. 56 at 204:4–11]. Esurance offers no
             evidence to support this defense. Defense No. 8, Esurance admits
6            that Kamradt has not received payment from anyone else, "so there
             would be no reduction." [*Id.* at 206:3–16]. Defense No. 10, 11, and
7            12, Esurance designee could not offer any testimony to support its
             arguments. [*Id.* at 207:3–9]. Esurance's remaining defenses are
8            contradicted by Esurance's actions and the undisputed facts of this
             case and are converse to Plaintiff's claims.

9

10  Dkt. No. 73 at 31. Plaintiff's one-sentence conclusory statements about alleged failures to make

11  out defenses are entirely insufficient to meet her burden of production that no triable issues of

12  fact exist. *See Nissan Fire*, 210 F.3d at 1103. Plaintiff's argument regarding the insufficiency of

13  defenses 5 (unclean hands), 8 (recovery should be reduced by amounts received from other

14  parties or insurers), and 10–12 (waiver, estoppel, and full performance) do not come close to

15  satisfying Plaintiff's burden of production. *See* Dkt. No. 9 (answer) at 16–18 (listing affirmative

16  defenses); Dkt. No. 73 at 31. And Plaintiff's single blanket statement regarding the remaining

17  fourteen defenses does not even provide any cites to the record for her assertions. *See* Dkt. No.

18  73 at 31. Thus, Defendant "has no obligation to produce anything" to support defenses 2–20.

19  *Nissan Fire*, 210 F.3d at 1103.

20       The Court therefore GRANTS summary judgment on the first affirmative defense (failure

21  to state a claim) and DENIES summary judgment as to all remaining affirmative defenses.

22  **H.   Attorney Fees**

23       Plaintiff is not entitled to attorney fees in this matter. As Plaintiff's own argument

24  indicates, *Olympic Steamship* fees are generally not awarded in Washington insurance cases. *See*

Dkt. No. 74 at 32 (acknowledging that the American rule for fees is typically followed except where "overriding considerations, such as oppressive behavior on the part of a party, indicate the need for such a recovery" (internal citations omitted)).

   While there is a possibility that Plaintiff could prove at trial that Defendant acted in bad faith, *Olympic Steamship* fees are reserved only for situations "when an insurer wrongfully denies 'coverage' as distinguished from the situation where 'coverage' is conceded but the claim fails or recovery is diminished on its factual merits." *Schreib v. Am. Fam. Mut. Ins. Co.*, 129 F. Supp. 3d 1129, 1142 (W.D. Wash. 2015) (quoting *Greengo v. Pub. Emps. Mut. Ins. Co.*, 135 Wn.2d 799, 959 P.2d 657 (1998) and stating that "Washington courts have unequivocally recognized [this] for decades"). Indeed, the Washington Supreme Court has explained that "[i]t is the purpose of the *Olympic Steamship* exception to make an insured whole when he is forced to bring a lawsuit to obtain the benefit of his bargain with an insurer." *Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 144 Wn.2d 130, 144, 26 P.3d 910 (2001); *see also Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wn. App. 753, 799 (2008), *review denied*, 164 Wn.2d 1033 (noting that *Olympic Steamship* provides equitable grounds for recovery of attorney fees "necessarily incurred in the endeavor" of successfully suing an insurer "*to obtain coverage*" (emphasis added)).

   Plaintiff conceded at oral argument that she was ultimately paid for everything covered under the Policy. Even her complaint notes that Esurance paid all storage fees and her entire total loss payment—albeit after she had hired counsel. Dkt. No. 1-1 ¶¶ 5.94, 5.96. Given that Plaintiff was made whole with regard to what was covered under the Policy *prior* to filing her lawsuit, there is absolutely no basis for an award of fees under *Olympic Steamship* and its progeny. *See Panorama Vill. Condo. Owners Ass'n Bd. of Directors*, 144 Wn.2d at 144 (2001) ("It is the

purpose of the *Olympic Steamship* exception to make an insured whole when [s]he is forced to *bring a lawsuit* to obtain the benefit of [her] bargain with an insurer." (emphasis added)).

## IV.   CONCLUSION

Accordingly, the Court ORDERS as follows:

> 1.    Defendant's motion for summary judgment (Dkt. No. 75) is GRANTED as to the breach of contract claim, CPA claim, and request for attorney fees under *Olympic Steamship*.

> 2.    Defendant's summary judgment motion (Dkt. No. 75) is DENIED as to the bad faith claim, IFCA claim, and Defendant's request to strike the declaration of Robert Dietz is DENIED AS MOOT.

> 3.    Plaintiff's motion for partial summary judgment (Dkt. No. 73) is GRANTED IN PART and DENIED IN PART.

> 4.    The revised Exhibit 4 to the Declaration of Eliot Harris (Dkt. No. 75-1) is STRICKEN.

> 5.    Defendant's first affirmative defense is STRICKEN.

Dated this 30th day of August 2024.

Tana Lin
United States District Judge